UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DROYCE LANG, on behalf of himself and all others similarly situated, | ) | CIVIL ACTION NO. 17-cv-1985 |
| Plaintiff, | ) | |
| vs. | ) | **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION, EXPEDITED OPT-IN DISCOVERY, AND COURT-SUPERVISED NOTICE TO POTENTIAL OPT-IN PLAINTIFFS** |
| HARVEY GULF INTERNATIONAL MARINE, LLC | ) | |
| Defendant. | ) | |

## I. INTRODUCTION

On March 8, 2017, Plaintiff Droyce Lang initiated this collective action against Harvey Gulf International Marine, LLC as a result of Defendant's practices and policies of failing to pay Plaintiff and other similarly-situated employees overtime compensation at the rate of one and one-half times their regular rates of pay for all of the hours they worked over 40 each workweek, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219

Plaintiff pursues these claims as a Representative Plaintiff, on behalf of himself and other similarly-situated employees. He does so pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the Act for unpaid minimum wages, overtime compensation, and liquidated damages "may be maintained against any employer… by any one or more employees for and on behalf of herself or themselves and other employees similarly situated."

Section 16(b) of the FLSA specifies that "[n]o employee shall be a party plaintiff to any action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Thus, FLSA actions like this one are "collective

actions," and require other affected individuals to "opt into" the litigation." *Crowley v. Paint & Body Experts of Slidell, Inc.*, No. CIV.A. 14-172, 2014 WL 2506519, at *5 (E.D. La. June 3, 2014); *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 225 (5th Cir. 2011); *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 (5th Cir. 2008); *Richard v. Flower Foods, Inc.*, No. 6:15-CV-2557, 2016 WL 6989349, at *3 (W.D. La. Nov. 28, 2016); *In re Katrina Canal Breaches Consolidated Litigation*, 2009 WL 1649501, at *5 (E.D.La. 2009).

Conditional certification is appropriately considered early in an FLSA collective action so that court-authorized notice can be given to potential opt-in plaintiffs. Notably, two (2) other individuals, in addition to Representative Plaintiff, have already opted into this case by submitting written consents. (See Notice of Filing Consent Forms, filed on 3/8/17 and 3/16/17). Before additional individuals opt in, the potential opt-in plaintiffs need to be notified of the present collective action and their right to join this action. Only through proper notification will they have the opportunity to determine whether they would like to participate.

As shown below, Representative Plaintiff has amply satisfied the "modest factual showing" required for conditional certification and the issuance of notice. *Hoffman-LaRoche v. Sperling*, 493 U.S. 165 (1989). Accordingly, the Court should conditionally certify this action as a collective action and order that notice be given to potential opt-ins of their right and opportunity to join in the action pursuant to 29 U.S.C. § 216(b).

## II. CONDITIONAL CERTIFICATION AND ISSUANCE OF NOTICE TO POTENTIAL OPT-IN PLAINTIFFS IS WARRANTED UNDER SECTION 16(B) OF THE FLSA UPON A "MODEST FACTUAL SHOWING"

The Supreme Court has recognized that a collective action under the FLSA furthers several important policy goals, which were identified in *Hoffman-LaRoche v. Sperling*, 493 U.S. 165 (1989):

First, the collective action "allows... plaintiffs the advantage of lower

> individual costs to vindicate rights by the pooling of resources." Second, "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity."

Three essential principles have guided the courts' implementation of the policy goals recognized in *Hoffman-LaRoche*: (1) conditional certification enables managerial responsibility over the notice process so that opt-in plaintiffs can be notified in an efficient and proper way; (2) managerial control over the notice process should be exercised early in a case; and (3) conditional certification and notice should be approved based only upon a "modest factual showing."

### A. <u>Conditional Certification Enables the District Court to Exercise Managerial Responsibility Over the Notice Process, And It Should be Exercised Early</u>

*Hoffman-LaRoche* held that in a collective action, the district court "has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffman-LaRoche*, 493 U.S. at 170-71. "It lies within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some later time." *Id.* at 171. Early facilitation of the notice process is essential to the opt-in plaintiffs as well. The benefits of an FLSA collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make an informed decision about whether to participate." *Id.* at 170.

Indeed, for potential opt-in plaintiffs, time is of the essence. Unlike Rule 23 class actions, the commencement of an FLSA collective action does not toll the running of the statute of limitations for putative class members. Rather, pursuant to the FLSA and the Portal-To-Portal Act, an opt-in plaintiff's claim against the employer is not commenced until the date his or her written consent to join the collective action is filed with the district court. *See* 29 U.S.C. §§ 216(b) and 256.

## B. <u>Courts Generally Approve Conditional Certification and Notice Based Upon a "Fairly Lenient" Standard</u>

Section 16(b) of the FLSA expressly authorizes a collective action to be maintained "by any one or more employees" on behalf of "themselves and other employees similarly situated." To determine whether proposed co-plaintiffs are, in fact, similarly situated for the purposes of the statute's requirements, the courts have used a two-phase inquiry. "Courts recognize two methods for determining whether to authorize notice to similarly-situated employees; the spurious class action *Shushan* approach, or the two-step *Lusardi* approach." *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 465 (S.D. Tex. 2012).

While the Fifth Circuit has not determined which method is more appropriate, commonly courts in the Fifth Circuit use the *Lusardi* two-stage process for certification of FLSA collective actions. *Id.*; *Portillo v. Permanent Workers, L.L.C.*, 662 F. App'x 277, 280 (5th Cir. 2016); *Chapman v. LHC Grp., Inc.*, 126 F. Supp. 3d 711, 720 (E.D. La. 2015); *Smith v. Manhattan Mgmt. Co., LLC*, No. CIV.A. 14-2623, 2015 WL 4097267, at *3 (E.D. La. July 7, 2015); *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987); *Sandoz*, 553 F.3d at 915 n.2; *Johnson v. Big Lots Stores, Inc.*, Nos. 04-3201, 05-6627, 2007 WL 5200224, at *3 (E.D.La Aug. 21, 2007); *Prejean v. O'Brien's Response Mgmt., Inc.*, No. CIV.A. 12-1045, 2013 WL 5960674, at *4 (E.D. La. Nov. 6, 2013); *England v. New Century Fin. Corp.,* 370 F.Supp.2d 504, 509 (M.D.La.2005); *Basco v. Wal–Mart Stores, Inc.,* No. 00–3184, 2004 WL 1497709, at *4 (E.D.La. July 2, 2004)); *White v. Integrated Elec. Techs., Inc.,* No. 11–2186, 2013 WL 2903070, at *3 (E.D.La. June 13, 2013); *West v. Lowes Home Ctrs., Inc.,* No. 6:09–1310, 2010 WL 5582941, at *4 (W.D.La. Dec.16, 2010), *report & recommendation adopted,* 2011 WL 126908 (W.D.La. Jan.14, 2011); *Lang v. DirecTV, Inc.,* 735 F.Supp.2d 421 (E.D.La.2010); *Richard*, 2016 WL 6989349, at *3; *Bridges v. Absolute Lawn Care LA, LLC*, No. CV 16-448, 2016 WL 6440326, at *8 (E.D. La.

Nov. 1, 2016); *Banegas v. Calmar Corp.*, No. CIV.A. 15-593, 2015 WL 4730734, at *3 (E.D. La. Aug. 10, 2015); *Nieto v. Pizzati Enterprises, Inc.*, No. CV 16-5352, 2017 WL 1153375, at *6 (E.D. La. Mar. 27, 2017); *Leon v. Diversified Concrete LLC*, No. CV 15-6301, 2016 WL 2825073, at *3 (E.D. La. May 13, 2016).

Moreover, the *Lusardi* approach "is consistent with the Fifth Circuit's statements that there is a fundamental, irreconcilable difference between the class action described by Rule 23, Fed. R. Civ. P., and the collective action provided by FLSA." *Marshall v. Louisiana*, No. CV 15-1128, 2016 WL 279003, at *7 (E.D. La. Jan. 22, 2016) (citing *Smith v. Servicemaster Holding Corp.*, No. 10-444, 2011 WL 2591088 (M.D.La. September 30, 2011 and *Sandoz*, 553 F.3d at 916.)

At the first stage, also known as the "notice stage", the court first determines whether notice should be given to potential members of the collective action, and this determination is usually made on the basis of "only ... the pleadings and any affidavits." *Mooney v. Aramco Services, Co.*, 54 F.3d 1207. 1213-14 (5th Cir. 2011); *Lima v. Int'l Catastrophe Sols., Inc.*, 493 F. Supp. 2d 793, 797 (E.D. La. 2007); *Bridges*, 2016 WL 6440326, at *8; *Prejean*, 2013 WL 5960674, at *4 .

At the second stage, "after discovery is largely complete and more information on the case is available, the court makes a final determination of whether all plaintiffs are sufficiently situation to proceed together in a single action." *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir. 2010). This stage is "precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial." *Prejean*, 2013 WL 5960674, at *5. "At that time, a more stringent approach governs and *Lusardi* applies a three-factor test, considering: (1) the extent to which employment settings

are similar or disparate; (2) the extent to which any of the employer's defenses are common or individuated; and (3) fairness and procedural concerns." *Chapman*, 126 F. Supp. 3d at 721.

The Fifth Circuit explained the first stage in *Portillo*:

> "[T]he plaintiff moves for conditional certification of his or her collective action. The district court then decides, usually based on the pleadings and affidavits of the parties, whether to provide notice to fellow employees who may be similarly situated to the named plaintiff, thereby conditionally certifying a collective action."

*Portillo*, 662 F. App'x at 280 (citing *Sandoz*, 553 F.3d at 921 n.2).

"Because plaintiffs seeking conditional certification need not identify other hypothetical collective action members, the stage one standard is considered to be 'fairly lenient.'" *Id.* "The cases in which conditional certification has been granted or upheld are clear that the 'similarly situated' standard at the initial conditional certification stage is *lenient,* plaintiff's burden is *not* heavy, the evidence needed is minimal and the existence of some variations between potential claimants is *not* determinative of lack of similarity." *Prejean v. O'Brien's Response Mgmt., Inc.*, No. CIV.A. 12-1045, 2013 WL 5960674, at *5 (E.D. La. Nov. 6, 2013)*; See also Zavala v. Wal Mart Stores Inc.,* 691 F.3d 527, 535–36 (3d Cir.2012) (citing *Symczyk v. Genesis HealthCare Corp.,* 656 F.3d 189 (3d Cir.2011)); *Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1260–61 (11th Cir.2008); *Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1217–19 (11th Cir.2001); *Thiessen v. Gen. Elec. Capital Corp.,* 267 F.3d 1095, 1102, 1105 (10th Cir.2001); *Mooney,* 54 F.3d at 1213–14); *Bridges*, 2016 WL 6440326, at *8; *Marshall*, 2016 WL 279003, at *6; *Banegas*, 2015 WL 4730734, at *3; *White,* 2013 WL 2903070, at *3; *Lang,* 2011 WL 6934607, at *3; *Baricuatro v. Ind. Personnel & Mgmt. Servs., Inc., No.* 11–2777, 2012 WL 5472302, at *1–2 (E.D.La. Nov.9, 2012); *West*, 2010 WL 5582941, at *7–9.

Because the court typically has little evidence at the first stage, the determination of conditional certification '"is made using a fairly lenient standard, and typically results in

'conditional certification' of a representative class." *Mooney,* at 1214; *Portillo* 662 F. App'x 277 at 280 ("courts typically grant certification"); *Prejean*, 2013 WL 5960674, at *4; *Chapman*, 126 F. Supp. 3d at 720; *Bridges*, 2016 WL 6440326, at *8; *Smith v. Manhattan Mgmt. Co., LLC*, No. CIV.A. 14-2623, 2015 WL 4097267, at *4 (E.D. La. July 7, 2015); *Nieto*, 2017 WL 1153375, at *6.

"[C]ollective actions under the FLSA are generally favored because such allegations reduce litigation costs for the individual plaintiffs and create judicial efficiency by resolving in one proceeding [all] 'common issues of law and fact arising from the same alleged…activity." *Walker*, 870 F.Supp.2d at 466; citing *Ryan v. Staff Care, Inc.*, 497 F.Supp.2d 820, 823 (N.D.Tex.2007); quoting *Hoffman-La Roche,* 493 U.S. at 170.

## III. PLAINTIFF HAS SATISFIED HIS MODEST BURDEN OF SHOWING THAT THE POTENTIAL OPT-IN PLAINTIFFS IN THIS FLSA COLLECTIVE ACTION ARE SIMILARLY-SITUATED

At the notice stage, the plaintiff bears the burden of making a preliminary factual showing that at least a few similarly situated individuals exist. *Lima,* 493 F. Supp. 2d *at* 798, citing *Badgett v. Texas Taco Cabana, L.P.*, 2006 WL 2934265, *2 (S.D.Tex Oct. 12, 2006).

"Generally, courts require nothing more than 'substantial allegations that the putative class members were together the victims of a single decision, policy, or plan,' and only a modest factual basis is required.'" *Lang*, 2011 WL 6934607, at *5; *Melson v. Directech Southwest, Inc.*, No. 07-1087, 2008 WL 258988, at *4 (E.D. La. June 25, 2008); *Prejean*, 2013 WL 5960674, at *4; *Chapman v. LHC Grp., Inc.*, 126 F. Supp. 3d 711, 720 (E.D. La. 2015); *Marshall*, 2016 WL 279003, at *7.

"[A] plaintiff need only demonstrate a *reasonable basis* for the allegation that a class of similarly situated persons may exist." *Chapman* at 720.; *Lima at* 798 (citing *Grayson v. K Mart*

*Corp.*, 79 F.3d 1086 (11th Cir. 1996)); *Bridges*, 2016 WL 6440326, at *9; *Nieto v. Pizzati Enterprises, Inc.*, No. CV 16-5352, 2017 WL 1153375, at *6 (E.D. La. Mar. 27, 2017).

"As discovery usually has not been conducted as this stage, courts do not review the underlying merits of the action in determining whether to conditionally certify." *Walker*, 870 F.Supp.2d at 465, citing *Colson v. Avnet, Inc.*, 687 F.Supp.2d 914, 926 (D. Ariz.2010). Any concerns with respect to individualized assessments or varying job duties is better suited for analysis at the second stage, rather than the first. *Marshall*, 2016 WL 279003, at *8.

Upon a showing that the employees are "similarly situated," the district court has the "discretion to implement the representative action procedure by facilitating notice to potential plaintiffs of their right to opt-into the action." *Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165, 172 (1989).

"Courts have repeatedly stressed that Plaintiffs must only be similarly--not identically-situated to proceed collectively." *Prejean* at *5 (citing Falcon v. Starbucks Corp., 580 F.Supp.2d 528, 535 (S.D.Tex2008); *Hipp,* 252 F.3d at 1217; *Reyes v. Tex. EZPawn, L.P.,* No. V–03–128, 2007 WL 101808, at *1 (S.D.Tex. Jan.8, 2007); *Hill v. Muscogee Cnty. Sch. Dist.,* No. 4:03–CV–60, 2005 WL 3526669, at *2 (M.D.Ga. Dec. 20, 2005); *Basco,* 2004 WL 1497709, at *5; *Frank v. Capital Cities Commc'ns, Inc.,* No. 80–CIV–2188–CSH, 1983 WL 643, at *2 (S.D.N.Y. Oct.11, 1983); *Bridges*, 2016 WL 6440326, at *9. In fact, "even plaintiffs who operate in different geographical locations and under different managers and supervisors may be deemed similarly situated in some circumstances, such as when they share similar job titles and responsibilities." *Chapman*, 126 F.Supp.3d at 720 (citing *Kuperman v. ICF Int'l*, No. 08-565, 2008 WL 4809167 (E.D.La, Oct. 31, 2008). Moreover, "collective action certification is not precluded by the fact that the punitive plaintiffs performed various jobs in differing departments and locations." *Id.*

"Whether employees are 'similarly situated' for purposes of the FLSA is determined in reference to their 'job requirements and with regard to their pay provisions." *Lima*, 493 F. Supp. 2d at 798 (citing *Dybach v. Florida Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11 Cir. 1991)); *Banegas*, 2015 WL 4730734, at *3. A determination of "similarly situated" is appropriate "when there is a 'demonstrated similarity among the individual situations…some factual nexus that binds the name plaintiffs and the potential class members together as victims of a particular alleged policy or practice.'" *Banegas*, at *4 (citing *Xavier v. Belfor USA Group, Inc.*,585 F.Supp.2d 873, 877 (E.D.La. Sep. 23, 2008)); *See also Leon*, 2016 WL 2825073, at *4.

"A plaintiff's right to proceed collectively under the FLSA may be foreclosed *only if* 'the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice.'" *Banegas,* at *4 (citing *Crain v. Helmerich and Payne Int'l Drilling Co.,* No. 92–0043, 1992 WL 91946 (E.D.La. Apr. 16, 1992))(Emphasis added.). "Overall the evidence needed is minimal, and the existence of some variations between potential claimants is not determinative of lack of similarity." *Banegas* at *4 (referring to *Prejean*, 2013 WL 5960674 at *8).

More than sufficient information exists in the present collective action to establish that the potential opt-in plaintiffs are similarly situated such that prompt notice of the action should be given. First, Representative Plaintiff Droyce Lang alleged in his Complaint and submitted a declaration stating that he and the potential opt-in plaintiffs are similarly situated. (See Exhibit 2, Declaration of Consent of Droyce Lange). Second, Opt-In Party Plaintiffs Jonathan Martinez and Ben Muller have submitted declarations establishing that they are similarly situated to Representative Plaintiff and the potential opt-in plaintiffs. (See Exhibits 3 and 4, Declarations of Ben Muller and Jonathan Martinez.)

### A. <u>Representative Plaintiff Droyce Lange Alleged in His Complaint and Submitted a Declaration Stating That He and the Potential Opt-in Plaintiffs are Similarly-Situated</u>

In Representative Plaintiff's Complaint, he defined the class as follows:

> All former and current [Able-Bodied] seaman[1] of Defendant Harvey Gulf International Marine, LLC between March 8, 2014 and the present.

(*See* Plaintiff's Complaint at ¶ 27). Representative Plaintiff and the class are similarly situated in several ways. First, they are/were employed by Harvey Gulf International Marine, LLC as Abled-Bodied Seamen. (*Id.* at ¶¶ 13, 14, 25). Second, they were paid by Defendant on a day rate basis for each day they worked. (*Id.* at ¶ 15.) Third, they work/worked in excess of 40 hours per week in a workweek, including up to 20 hours per day, seven (7) days per week. (*Id.* at ¶ 16.) Fourth, they performed a substantial amount of non-seaman's work, such as loading and unloading of vessel supplies and equipment. (*Id.* at ¶ 18.) Fifth, they were not paid overtime compensation at the rate of one and one-half their regular rates of pay for the hours they worked over 40 each workweek. (*Id.* ¶¶ 19, 30.) Sixth, they were scheduled and worked 28 days on duty and 14 days off of duty. (Ex. 2, ¶ 4, Ex. 3, ¶ 4, Ex. 4, ¶ 4.)

In addition to the allegations in Plaintiff's Complaint, Representative Plaintiff submitted a declaration stating that he and the potential opt-in plaintiffs are similar in these regards. Representative Plaintiff Droyce Lang declared:

1. I was employed by Harvey Gulf International Marine, LLC an Able-Bodied Seaman between October 11, 2013 and March 3, 2016.
2. During my employment, Harvey Gulf International Marine, LLC paid me on a date rate basis for each day that I worked.

3. During my employment, I worked 18 to 20 hours per day, seven (7) days a week, 28 days straight.
4. During my employment, I was scheduled and worked 28 days on duty and 14 days off of duty.
5. As a Seaman, I was required to perform a substantial amount of non-seaman's work, such as loading and unloading of vessel supplies and equipment. I spent more than 20% of my time performing non-seaman's work, and I estimate that I spent approximately 40-50% of my time performing non-seaman's work on average.
6. I regularly worked over 40 hours per week, but I was not paid overtime compensation at the rate of one and one-half times my regular rate of pay for all of the hours I worked over 40 each workweek.
7. As a result of Harvey Gulf International Marine, LLC practices and policies, I was not fully compensated for all of the time I actually worked, including all of the overtime hours I worked over 40 in a workweek.
8. I observed that Harvey Gulf International Marine, LLC did this to other Able-Bodied Seaman, and I believe I am similarly-situated to these employees.
9. I seek to recover unpaid overtime compensation from Harvey Gulf International Marine, LLC under the FLSA, and consent to be a named Plaintiff in the above-captioned collective action. I agree to be bound by any adjudication of this action by the Court, and any collective action settlement approved by this Court as being fair, adequate, and reasonable.

---

[1] For clarification purposes, while Plaintiff identified "seaman" as individuals employed by Defendant as Captains, Engineers, Deck Hands, Able-Bodied Seaman, Tug Boat Mates, and ASV Mates (*see* Complaint ¶14), Plaintiff seeks conditional certification on behalf of only individuals employed as Able-Bodied Seaman.

10. I consent to bring this action on behalf of myself and a class of similarly-situated opt-in plaintiffs, as defined in the Complaint as follows:

> All former and current seaman employed by of Defendant Harvey Gulf International Marine, LLC between March 8, 2014 and the present.

11. During my employment, there were two (2) to three (3) Abled-Bodied Seaman that I worked with per shift, and I worked with approximately 150 different Abled-Bodied Seaman at various times.

12. I estimate that there are 500-600 Abled-Bodied Seaman who are similarly situated to me.

13. I believe that I am similarly situated to the class of opt-in plaintiffs because, during my employment at Harvey Gulf International Marine, LLC, I observed that the class and I:

    (a) are/were employed by Harvey Gulf International Marine, LLC as Able-Bodied Seaman;

    (b) are/were paid on a day rate basis for each day we work/worked;

    (c) work/worked in excess of 40 hours in a workweek, including 18 to 20 hours per day, seven (7) days a week;

    (d) are/were scheduled and worked 28 days on duty and 14 days off of duty;

    (e) performed a substantial amount of non-seaman's work, such as loading and unloading of vessel supplies and equipment.

    (f) are/were not paid overtime at the rate of one and one-half times our regular rates of pay for all of the hours we worked over 40 in a workweek.

In *Lima v. Int'l Catastrophe Sols., Inc.*, 493 F. Supp. 2d 793, 798 (E.D. La. 2007), this Court found that the following facts as provided by the plaintiff in a sworn statement was sufficient to warrant certification: (1) the employees worked within the same time frame; (2) were all classified as independent contractors; (3) were not paid overtime wages; and (4) they were aware of other individuals who were subjected to the same pay practices. *Id.* at 798-799. In *Lima*, this Court stated:

> It is true that the Plaintiffs present no affidavits of workers employed by other subcontractors besides C.L.S., but a review of the Defendants' pay records and agreements to subcontract will easily reveal whether a common plan existed to improperly pay overtime salaries. It seems appropriate to certify the collective action at this time and revisit the question later after some discovery. If the allegations regarding the C.L.S. and ICS contract prove to be true, it would be reasonable to conclude that ICS may also have engaged in these same practices with other subcontractors. It is unlikely that the other subcontractors' workers received a different rate of pay or did substantially different work. If sufficient evidence is not developed to demonstrate that the other subcontractors were not involved in the same alleged scheme or practice, the Court may decertify the collective action as to those parties after sufficient discovery is conducted.

*Id.* at 799-800.

In *Prejean v. O'Brien's Response Mgmt., Inc.*, No. CIV.A. 12-1045, 2013 WL 5960674, at *6 (E.D. La. Nov. 6, 2013), this Court, in granting conditional certification, found that the plaintiff and the proposed class members were similarly situated based on the following: (1) they were assigned to monitor, manage or track the personnel and equipment involved in the oil spill cleanup operations; (2) they were to report on the status of those efforts to their superiors; (3) they were required to follow certain policies regarding their work conditions and performance; (4) they were classified by the defendant as independent contractors; and (5) they worked overtime, but did not receive any overtime compensation.

In *Richard v. Flower Foods, Inc.*, No. 6:15-CV-2557, 2016 WL 6989349, at *5 (W.D. La. Nov. 28, 2016), the court granted conditional certification based solely on declarations stating allegations that all distributors in the proposed class were "were subjected to a common decision, policy, or plan – their mis-classification as independent contractors." The court found that plaintiffs satisfied the *Lusardi* standard because the affidavits showed that the proposed class members: (1) are subject to the similar job requirements; (2) had similar pay provisions; and (3) were subjected to the defendants' ability to control many of their job functions. *Id.* at *7.

In *Bridges v. Absolute Lawn Care LA, LLC*, No. CV 16-448, 2016 WL 6440326, at *11 (E.D. La. Nov. 1, 2016), this Court granted conditional certification on the basis of declarations stating that the plaintiffs and the proposed class members: (1) were paid a straight rate in cash, regardless of whether they worked over 40 hours in a work week; (2) no taxes were withheld by the defendant; and (3) were aware of other employees who were paid the same way.

In *Banegas v. Calmar Corp.*, No. CIV.A. 15-593, 2015 WL 4730734, at *4 (E.D. La. Aug. 10, 2015), this Court held that plaintiff provided sufficient evidence to meet the lenient standard for conditional certification by providing allegations that: (1) he worked in a group of 203 other sprayers; (2) defendant employed more than one group of sprayers; (3) other sprayers has essentially the same job duties; and (4) other employees were compensated pursuant to a similar policy, based on conversation and observation.

In *Leon v. Diversified Concrete LLC*, No. CV 15-6301, 2016 WL 2825073, at *4 (E.D. La. May 13, 2016), this Court granted conditional certification based solely on plaintiff's declaration that: (1) he worked more than 40 hours in a week, but was not paid overtime wages; (2) other coworkers worked more than 40 hours in a week; and (3) at least one of his coworkers did not receive overtime wages.

In the instant matter, Representative Plaintiff has alleged that he and the class: (1) are/were employed by Harvey Gulf International Marine, LLC in the same position - as Abled-Bodied Seamen; (2) are/were paid by Defendant on a day rate basis for each day they worked; (3) work/worked in excess of 40 hours per week in a workweek, including up to 20 hours per day, seven (7) days per week; (4) are/were scheduled and worked 28 days on duty and 14 days off of duty; (5) performed a substantial amount of non-seaman's work, such as loading and unloading of vessel supplies and equipment; and (6) are/were not paid overtime compensation at the rate of one and one-half their regular rates of pay for the hours they worked over 40 each

workweek. (*Id.* ¶¶ 19, 30.)

Thus, Representative Plaintiff has sufficiently alleged that he and the potential opt-in plaintiffs are similarly situated. These specific and substantial allegations alone warrant conditional certification.

### B. <u>The Opt-in Party Plaintiffs Have Submitted Declarations Establishing That They Are Similarly Situated to Representative Plaintiffs and The Potential Opt-In Plaintiffs</u>

In addition to Representative Plaintiff's allegations, Opt-In Party Plaintiffs Jonathan Martinez and Ben Muller, who have already opted in to this collective action as party Plaintiffs pursuant to 29 U.S.C. § 216(b), have filed with the Court Notices of Consent, and have provided declarations establishing that they are similarly situated to Representative Plaintiff and the potential opt-in plaintiffs. Ben Muller declared:

1. I was employed by Harvey Gulf International Marine, LLC an Able-Bodied Seaman between February 13, 2013 and January 20, 2015.
2. During my employment, Harvey Gulf International Marine, LLC paid me on a date rate basis for each day that I worked.
3. During my employment, I worked 18 to 20 hours per day, seven (7) days a week, 28 days straight.
4. During my employment, I was scheduled and worked 28 days on duty and 14 days off of duty
5. As a Seaman, I was required to perform a substantial amount of non-seaman's work, such as loading and unloading of vessel supplies and equipment. I spent more than 20% of my time performing non-seaman's work, and I estimate that I spent approximately 40% of my time performing non-seaman's work on average.

6. I regularly worked over 40 hours per week, but I was not paid overtime compensation at the rate of one and one-half times my regular rate of pay for all of the hours I worked over 40 each workweek.
7. As a result of Harvey Gulf International Marine, LLC practices and policies, I was not fully compensated for all of the time I actually worked, including all of the overtime hours I worked over 40 in a workweek.
8. I observed that Harvey Gulf International Marine, LLC did this to other seaman, and I believe I am similarly-situated to these employees.
9. During my employment, there were two (2) to three (3) Abled-Bodied Seaman that I worked with per shift, and I worked with approximately 40-45 different Abled-Bodied Seaman at various times.
10. I believe that I am similarly situated to other Abled-Bodied Seaman employed by Harvey Gulf International Marine, LLC because I observed that other Abled-Bodied Seaman and I:

    (a) are/were employed by Harvey Gulf International Marine, LLC Able-Bodied Seaman;

    (b) are/were paid on a day rate basis for each day we work/worked;

    (c) work/worked in excess of 40 hours in a workweek, including 18 to 20 hours per day, seven (7) days a week;

    (d) are/were scheduled and worked 28 days on duty and 14 days off of duty;

    (e) performed a substantial amount of non-seaman's work, such as loading and unloading of vessel supplies and equipment.

    (f) are/were not paid overtime at the rate of one and one-half times our regular rates of pay for all of the hours we worked over 40 in a workweek.

(*See* Exhibit 3, Declaration of Ben Muller.)

Additionally, Jonathan Martinez declared:

1. I was employed by Harvey Gulf International Marine, LLC an Able-Bodied Seaman between July 11, 2013 and March 9, 2016.
2. During my employment, Harvey Gulf International Marine, LLC paid me on a date rate basis for each day that I worked.
3. During my employment, I worked 12-14 hours or more per day, seven (7) days a week, 28 days or more straight.
4. During my employment, I was scheduled and worked 28 days on duty and 14 days off of duty, but often times worked more than 28 days straight.
5. As a Seaman, I was required to perform a substantial amount of non-seaman's work, such as loading and unloading of vessel supplies and equipment. I estimate that I spent more than 25% of my time performing non-seaman's work.
6. I regularly worked over 40 hours per week, but I was not paid overtime compensation at the rate of one and one-half times my regular rate of pay for all of the hours I worked over 40 each workweek.
7. As a result of Harvey Gulf International Marine, LLC practices and policies, I was not fully compensated for all of the time I actually worked, including all of the overtime hours I worked over 40 in a workweek.
8. I observed that Harvey Gulf International Marine, LLC did this to other seaman, and I believe I am similarly-situated to these employees.
9. During my employment, there were two (2) to three (3) Abled-Bodied Seaman that I worked with per shift, and I worked with approximately 200 different Abled-Bodied Seaman at various times.
10. I estimate that there are more than 500 Abled-Bodied Seaman who are similarly situated to me.

11. I believe that I am similarly situated to other Abled-Bodied Seaman employed by Harvey Gulf International Marine, LLC because I observed that other Abled-Bodied Seaman and I:

(a) are/were employed by Harvey Gulf International Marine, LLC Able-Bodied Seaman;

(b) are/were paid on a day rate basis for each day we work/worked;

(c) work/worked in excess of 40 hours in a workweek, including 18 to 20 hours per day, seven (7) days a week;

(d) are/were scheduled and worked 28 days on duty and 14 days off of duty;

(e) performed a substantial amount of non-seaman's work, such as loading and unloading of vessel supplies and equipment.

(f) are/were not paid overtime at the rate of one and one-half times our regular rates of pay for all of the hours we worked over 40 in a workweek.

(*See* Exhibit 4, Declaration of Jonathan Martinez.)

The allegations and in the Complaint and these three (3) declarations are sufficient evidence to warrant conditional certification. *Chapman v. LHC Grp., Inc.*, 126 F. Supp. 3d 711, 715 (E.D. La. 2015) (granting the plaintiff's request to conditionally certify a nationwide class of office managers, administrative personnel, and clinical technicians based on the allegations of Chapman and three other employees that they were prohibited from recording more than 40 hours on their time sheets); *Rendon v. Glob. Tech. Sols., LLC*, No. CV 15-242, 2015 WL 8042169, at *9 (E.D. La. Dec. 4, 2015)(granting plaintiff's motion for conditional certification based solely on plaintiff's complaint and a declaration that he worked with two men who he was aware of that earned the same wages and performed the same job duties as him); *Martinez v. S. Sols. Land Mgmt. LLC*, No. 14-2366 (E.D.La. 2015)(one additional opt-in plaintiff and evidence of conversations suggesting other who might join the suit); *Banegas*, 2015 WL 4730734, at *5 ("Taken to its logical conclusion, Defendant's argument would result in a categorical rule that

conditional certification of a proposed FLSA collective action is never appropriate where the complaint is not joined by multiple named plaintiffs, or where the named plaintiff does not attach affidavits of other potential class members who express an interest in joining the action. This focus on the intent of potential opt-in class members has no statutory basis in the FLSA.); *Leon*, 2016 WL 2825073, at *4 (plaintiff's declaration and allegations in complaint sufficient for conditional certification); *Bauer v. Transtar Industries, Inc.,* No. 1:15-cv-2602, 2016 WL 1408830, *3 (N.D. Ohio 2016) (declaration of representative plaintiff and two (2) opt-in plaintiffs is sufficient "to meet the law threshold for showing they are similarly situated"); *Ziemski v. P & G Hospitality Group, LLC*, No. 1:10-CV-2920, 2011 WL 1366668, *2 (N.D. Ohio Apr. 12, 2011) ("affidavits of named Plaintiff and two opt-in Plaintiffs fulfills the 'modest factual showing'"); *Douglas v. GE Energy*, No. 1:07-cv-77, 2007 WL 1341779, at *6 (N.D. Ohio April 30, 2007) (two affidavits are "sufficient to warrant conditional treatment of the case as a collective action" and notice to the opt-in class); *Brown v. Money Tree Mortgage, Inc*., No. 2651-JWL, 222 F.R.D. 676 (D. Kan. Aug. 23, 2004) (conditional certification appropriate based on allegations in a complaint supported by affidavits of two former employees); *De Asencio v. Tyson Foods, Inc*., 130 F. Supp. 2d 660, 663-64, aff'd 342 F.3d 301 (3rd Cir. 2003) (declarations of four employees justifies notice to the opt-in class); *Chin v. Tile Shop, LLC*, 57 F. Supp. 3d 1075, 1083 (D. Minn. 2014) (declaration of representative plaintiff and two (2) other former employees is sufficient).

## IV. PLAINTIFFS' PROPOSED OPT-IN DISCOVERY SHOULD BE APPROVED

Representative Plaintiff easily meets the minimal burden of showing that he is similarly situated to the potential opt-in plaintiffs. Therefore, conditional certification of the FLSA class, expedited opt-in discovery, and court-supervised notice are warranted, as discussed above. *See* Section II(A)(2), *supra*.

To facilitate prompt notice to the potential opt-in plaintiffs, Representative Plaintiff has attached hereto a set of opt-in discovery requests (*see* Exhibit 5). Therein, Plaintiff seeks the identity, contact information, and pertinent employment dates of all former and current Able-Bodied Seaman employed by Harvey Gulf International Marine, LLC who worked over 40 hours in one or more workweeks at any time between March 8, 2014 and the present.

The requested information is necessary to determine the contact information for the potential opt-in plaintiffs who will be eligible to be notified of this lawsuit in the event the Court grants the instant Motion. In *Hoffman-La Roche*, the Supreme Court flatly affirmed the district court's approval of both expedited interrogatories seeking the names of potential opt-in plaintiffs and court-facilitated notice to the potential opt-ins. Additionally, in *Lima*, 493 F. Supp. 2d at 800, this Court ordered the defendant to produce the class information so that Plaintiff could issue notice to the potential class members. In *Richard*, 2016 WL 6989349, at *9, the court ordered the defendant "to provide Plaintiffs with an updated computer readable data file containing information necessary to facilitate notice, including the name, last known mailing address, last known telephone number, email address, employment dates as a distributor, date of birth and the last four digits of the social security numbers" of each potential class member within 10 days of the court's order.

As discussed above, time is of the essence, because the commencement of an FLSA collective action does not toll the running of the statute of limitations for the potential opt-in plaintiffs. Accordingly, prompt notification is necessary for the potential opt-ins to receive the full benefit of the FLSA's collective action mechanism and vindicate their FLSA rights in an economical and efficient manner. *See Hoffman-LaRoche*, 493 U.S. at 170.

## V. CONCLUSION

For the foregoing reasons, Representative Plaintiff respectfully requests that this

Honorable Court conditionally certify the proposed FLSA class and implement a procedure, set forth in the accompanying proposed order (*see* Exhibit 1), whereby potential opt-in plaintiffs are notified of Plaintiff's FLSA claims and given an opportunity to join this collective action as party plaintiffs pursuant to 29 U.S.C. § 216(b).

Respectfully submitted,

/s/ Anthony J. Lazzaro

Anthony J. Lazzaro (0077962)
*Admitted Pro Hac Vice*
Chastity L. Christy (0076977)
*Admitted Pro Hac Vice*
The Lazzaro Law Firm, LLC
920 Rockefeller Building
614 W. Superior Avenue
Cleveland, Ohio 44113
Phone: 216-696-5000
Facsimile: 216-696-7005
anthony@lazzarolawfirm.com
chastity@lazzarolawfirm.com
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2017, a copy of the foregoing *Plaintiff's Motion for Conditional Certification, Expedited Opt-In Discovery, and Court-Supervised Notice to Potential Opt-In Plaintiffs, and Memorandum in Support* was sent to all parties by operation of the Court's electronic filing system. Parties may access the filing through the Court's system.

/s/ Anthony J. Lazzaro
One of the Attorneys for Plaintiffs